IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Vincent and Kristina Reusser,

        Plaintiffs,

v.

Saxon Mortgage Services, Inc., et al.,

        Defendants.

Case No. 2:12-cv-00087

Judge Graham

Magistrate Judge Abel

OPINION AND ORDER

Plaintiffs Vincent and Kristina Reusser bring this action against defendants Saxon Mortgage Services, Inc. and Bank of America Corporation ("BOA") for alleged fraud in connection with several modifications to their home mortgage loan. This matter is before the court on the motions of Saxon and BOA to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    Background**

    **A.    Factual Allegations**

In June 1999 Vincent Reusser obtained a 30-year home mortgage from Standard Federal Bank with a principal balance of $106,000.00. Standard Federal Bank was renamed LaSalle Bank Midwest in 2005 and was later acquired by BOA. A subsidiary of BOA, BAC Home Loans Servicing, LP, is alleged to have been the initial servicer of the mortgage. Saxon became the servicer in July 2011.

The focus of the complaint is on the modifications that were made to the mortgage beginning in June 2006. A "Misc. Posting" of $35,151.45 was made on June 2, 2006 that increased the loan balance from about $103,000 to over $138,000. The posting is reflected in a loan history statement that is attached to the complaint. Reusser alleges that the purpose of the posting was not stated or explained.

Reusser went through a divorce in May 2008 and notified LaSalle of his desire to discuss a loan workout plan. In July 2008 Reusser was notified that LaSalle had merged with BOA and that future payments should be made to BOA. He also received an acknowledgment from BOA of his inquiry

about a loan workout. BOA instructed Reusser to fill out a loan workout application. The complaint is silent on whether Reusser completed the application.

On October 24, 2008, BOA delivered a letter to Reusser notifying him that his mortgage was in default. The letter offered to modify the mortgage according to the terms and conditions stated in an agreement attached to the letter. The proposed modification would increase his monthly payments from $705 to $763. Reusser executed the modification agreement and returned it to BOA. He paid a $1587 modification fee in November 2008, as required by the agreement. The complaint does not state whether Reusser made any monthly payments after the October 2008 modification.

On April 2, 2009, BOA sent another letter to Reusser following his discussions with a representative of BOA's "home retention" program. Included was a new loan modification agreement in which Reusser acknowledged that he owed $4592 in taxes, insurance premiums, and other costs. Reusser signed the agreement, which lowered his monthly payment to $570.

Reusser received a third letter, dated July 23, 2009, offering to modify his mortgage. The letter stated that he was in default, and proposed a modification whereby Reusser would pay a $1707 fee and have his monthly payment adjusted to $804. Reusser signed the modification agreement and paid the fee.

Reusser received notice in July 2010 from BOA that he was in default and owed $17,478 on the mortgage. He received another default notice in April 2011 stating that he owed $24,133.

On July 1, 2011 Reusser received notice that BAC Home Loans had assigned the right to collect payment on his mortgage to Saxon.

**B.     Causes of Action**

The complaint asserts six claims. The first claim is for violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.02. The complaint alleges that BOA and its loan servicer offered the

October 2008, April 2009, and July 2009 loan modification agreements despite knowing that Reusser could not pay the increased obligations. The complaint alleges that the collection of fees associated with the modifications was unconscionable. Plaintiffs have voluntarily dismissed this claim as to BOA.

In their second claim for relief, plaintiffs assert that defendants violated the Ohio Mortgage Broker Act, O.R.C. § 1327.07, by the same conduct alleged in the first claim. Plaintiffs have voluntarily dismissed this claim as to both BOA and Saxon.

The third cause of action is for fraud. The complaint alleges that defendants misrepresented to Reusser that he would be able to afford the loan modifications. The complaint further alleges that defendants acted with reckless disregard to the effect such modifications would have on the loan balance.

In their fourth claim for intentional infliction of emotional distress, plaintiffs allege that defendants' failure to disclose fee and loan balance information relating to the loan modifications caused the plaintiffs to suffer mental anguish and emotional distress over a period of several years.

The plaintiffs seek equitable relief in their fifth claim, requesting a stay of all collection and foreclosure activities associated with their mortgage.

The sixth claim seeks an order requiring defendants to remedy any injury to plaintiffs' credit score proximately caused by defendants' lending practices. Plaintiffs have voluntarily dismissed this claim as to both BOA and Saxon.

II.     **Standard of Review**

When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the

complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires

4

the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion

#### A. Claims against Saxon

Saxon presents a simple argument for dismissing the remaining claims against it – the complaint's allegations of wrongdoing concern events that occurred from 2006 to 2009, well before Saxon was assigned the right to collect payments in 2011. Though the claims refer to "defendants" in the plural, the only specific allegations against Saxon relate to its residency and to the 2011 assignment.

In response, plaintiffs admit that Saxon had no direct involvement in the loan modifications. Plaintiffs argue that the claims against Saxon should be saved from dismissal on the chance that discovery might show Saxon assumed the liability of its predecessor in servicing the mortgage. But, as Saxon correctly observes, the complaint fails to give notice that successor liability is the theory upon which the claims against Saxon are made. See Fed. R. Civ. P. 8(a)(2) (requiring that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). Moreover, even if the complaint could be construed to suggest such a theory, the law in Ohio is that successor companies are not liable for the liabilities of their predecessors unless certain well-defined exceptions are satisfied. See Mickowski v. Visi-Trak Worldwide, LLC, 415 F.3d 501, 509-10 (6th Cir. 2005) (discussing Ohio law); see also 63 Am. Jur.2 Products Liability § 119 ("[T]he general rule is one of successor nonliability."). The complaint does not contain any allegations that support an inference that one of the exceptions to successor nonliability could apply to Saxon.

From the face of the complaint, the only claim that has an apparent connection with Saxon is the request for an order staying all collection and foreclosure activities pending the adjudication of the case on the merits. Saxon has moved to dismiss this claim on the grounds that it represents an insufficient attempt to obtain preliminary injunctive relief. Plaintiffs have not separately moved for injunctive relief, as required by S.D. Ohio Local Civil Rule 65.1(b), nor have they made a showing that the four traditional factors for granting an injunction are satisfied. See McGlone v. Bell, 681 F.3d 718, 735 (6th Cir. 2012).

In response, plaintiffs argue that they are not requesting injunctive relief but rather "seek a declaratory judgment from the Court to stay collection activities until the resolution of this case on its merits." This argument is not well-taken. The interim relief sought in the complaint can be accomplished only by means of a preliminary injunction. Having failed to file a properly-supported motion for preliminary injunction, plaintiffs cannot now escape dismissal of their claim by recasting it as a request for interim declaratory judgment.

Accordingly, the claims against Saxon are dismissed in their entirety.

### B.   Claims against BOA

Under Rule 9, a party making allegations of fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This rule requires a plaintiff: (1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." Republic Bank & Trust Co. v. Bear Stearns & Co., Inc., 683 F.3d 239, 246-47 (6th Cir. 2012). Although "conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" Id. (quoting Iqbal, 556 U.S. at 678 (internal quotation marks omitted)).

The complaint alleges that BOA fraudulently induced Reusser to enter into the loan modification agreements by its false representations that he would be able to afford the modified loan obligations. The elements of fraudulent inducement are: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused by the reliance. Info. Leasing Corp. v. Chambers, 152 Ohio App.3d 715, 740 (Ohio Ct. App. 2003).

BOA argues that the complaint fails to plead with particularity that BOA made a false statement to Reusser. The court agrees. Though the complaint alleges that Reusser was told that he would be able to afford the loan modifications, it does not allege when, where, or by whom such a representation was made to him. The letters that accompanied the proposed loan modification agreements (and which are attached to the complaint) do not contain any representations about Reusser's ability to afford the modifications.

In response to the motion to dismiss, plaintiffs concede that they have not sufficiently alleged a false statement by BOA. Plaintiffs instead argue that BOA committed fraud by failing to disclose the fees that would be charged under the loan modifications. This same allegation underpins plaintiffs' claim for intentional infliction of emotional distress – that plaintiffs suffered emotional distress as a result of BOA's failure to disclose information about the fees and adjusted loan balances associated with the loan modifications.

BOA correctly argues that the existence of the loan modification agreements excludes tort claims based on the same conduct that would constitute a breach of contract. See In re Nat'l Century Fin. Enterprises, Inc., Inv. Litig., 541 F.Supp.2d 986, 1016 (S.D. Ohio 2007); Hanlin v. Ohio Builders

and Remodelers, Inc., 196 F.Supp.2d 572, 579 (S.D. Ohio 2001) ("[U]nder Ohio law, the existence of a contract action generally excludes a cause of action based upon the same conduct sounding in tort."); Labate v. Nat'l City Corp., 113 Ohio App.3d 182, 190 (Ohio Ct. App. 1996).  Here, the loan modification agreements attached to the complaint each stated the following: the new loan balance, new interest rate, new monthly payment amount, new monthly escrow amount, new mortgage maturity date, and the amounts to be paid by the borrower in the form of either a lump sum contribution, modification fee, or unpaid taxes and insurance (with interest). Plaintiffs' allegations in support of their tort claims – that they were not credited with the correct loan balance and that the fees they were charged differed in kind or amount from what the agreements stated – arise from the same operative facts as would a claim for breach of contract.  That is to say, in asserting their tort claims, plaintiffs have failed to identify a legal duty independent of the contract that has been violated and have failed to identify damages independent from those attributable to a breach of contract.  See Kott v. Gleneagles Professional Builders & Remodelers, Inc., 197 Ohio App.3d 699, 704 (Ohio Ct. App. 2012) ("[T]he existence of a contract precludes the assertion of a tort claim based on the same conduct unless there is a duty owed separate from the contract.  In such a case, the plaintiff must show damages separate from those attributable to a breach of contract.").  Accordingly, those tort claims based on the loan modification agreements are precluded.

Though the complaint's claim for fraud references only the loan modifications, plaintiffs' response to BOA's motion to dismiss seeks to include the "Misc. Posting" of $35,151.45 in June 2006 within the scope of the fraud claim.  Plaintiffs do not argue that the posting itself was actionable, but rather that it was BOA's failure explain the purpose of the posting on the loan history statement that was actionable.  In other words, plaintiffs argue that the loan history statement should have specified the nature of the posting in terms more specific than "Misc."  However, a fraud claim based on such

an allegation is legally insufficient here because the complaint fails to allege how plaintiffs justifiably relied to their detriment on BOA's failure to explain the posting on the loan statement. The complaint says nothing about how plaintiffs responded upon discovering the posting.

Finally, the complaint asserts a claim for injunctive relief against BOA to stay all collection and foreclosure activities until the merits of this case are adjudicated. This claim fails for the same reasons as stated above in relation to Saxon.

### IV.     Conclusion

Accordingly, defendants' motions to dismiss (docs. 4 and 6) are GRANTED, and this action is hereby dismissed.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: September 18, 2012